`THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENDRA J. WOODSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WENDY NICHOLAS, et. al. | : | No. 24-5146 |

## REPORT AND RECOMMENDATION

ELIZABETH T. HEY, U.S.M.J                                                                    December 23, 2025

      This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Kendra J. Woodson ("Woodson"), challenging her 2023 Montgomery County conviction for aggravated assault at CP-46-CR-0006135-2022.[1] For the reasons that follow, I recommend that the petition be dismissed as untimely.

## I.    FACTS AND PROCEDURAL HISTORY[2]

      On April 17, 2023, Woodson entered a negotiated guilty plea to aggravated assault before the Honorable Thomas L. DelRicci.[3] N.T. 4/17/23 at 14; Docket Sheet

---

[1]Woodson identifies her case as MJ-38101-CR-0000428-2022. Docs. 1 & 14. That magisterial district judge number was assigned the identified common pleas number. See Commonwealth v. Woodson, CP-46-CR-0006135-2022, Criminal Docket (Mont. Cty. C.C.P.) ("Docket Sheet").

[2]The court ordered but did not receive the state court record from the Montgomery County Court of Common Pleas. Doc. 18. The procedural history is taken from the state court docket sheet and documents attached to the petition and response. Docs. 14 & 38. The first citation to a document will identify where it can be found as an attachment. Pinpoint citations to documents filed in this court use the court's ECF pagination.

[3]Woodson admitted that on September 16, 2022, she provided a controlled substance to Bobby Lee, rendering him unconscious for several hours and causing

(Disposition Sentencing/Penalties & entry dated Apr. 17, 2023).[4]  Woodson initially informed the court that she did not want to plead guilty, but instead wanted a mental health evaluation.  N.T. 4/17/23 at 7.  However, following a break in the proceedings, Woodson clarified that she wanted to plead guilty but wanted the court to order a mental health evaluation as part of her sentence.  Id. at 12.  Following the plea, Judge DelRicci sentenced Woodson to the agreed-upon term of 3 -to- 6 years in prison.  Id. at 15; Docket Sheet (Disposition Sentencing/Penalties & entry dated Apr. 17, 2023).  The judge also directed that Woodson receive a mental health evaluation upon admission to state prison.  Commonwealth v. Woodson, CP-46-CR-0006215-2022, Trial/Plea/Sentence, at 2 (Mont. Cty. C.C.P. Apr. 17, 2023) (attached to Response, Doc. 38 at 59).

On April 28, 2023, defense counsel filed a nunc pro tunc post-sentence motion to vacate Woodson's guilty plea and sentence and to withdraw from the case.  Commonwealth v. Woodson, Post-Sentence Motion to Vacate Guilty Plea and Sentence, Withdraw Guilty Plea, Withdraw as Counsel and Appoint Conflict Counsel *Nunc Pro Tunc* (Mont. Cty. C.C.P. Aug. 28, 2023) (attached to Response, Doc. 38 at 65-75).[5]

---

compartment syndrome in his right leg.  N.T. 4/17/23 at 14 (attached to Response, Doc. 38 at 42).

[4]Pursuant to the plea agreement, the Commonwealth would nol pros all remaining counts and Woodson would be sentenced to 3 -to- 6 years' incarceration, with credit for time served.  N.T. 4/17/23 at 2; Commonwealth v. Woodson, CP-46-CR-0006135-2022, Plea Agreement (Mont. Cty. C. C. P. Jan. 9, 2023) (attached to Response, Doc. 38 at 59).

[5]Post-sentence motions are due ten days after sentence is imposed.  Pa R. Crim. P. 720(A)(1).  Counsel was obviously aware that the motion was a day late because he titled his motion nunc pro tunc.

Counsel explained that a few days earlier, on April 25, he received an email from Woodson's prison caseworker stating that Woodson wished to appeal her sentence and was alleging that counsel had coerced her into pleading guilty. Id. at 72. Woodson reiterated this allegation during a telephone call with counsel on April 28. Id. On May 1, 2023, the court ordered the Commonwealth's response and set a hearing date on Woodson's motion. Commonwealth v. Woodson, CP-46-CR-0006135-2022, Order (Mont. Cty. C.C.P. May 1, 2023) (attached to Response, Doc. 38 at 78). The order was silent as to whether the court was granting the request to file the motion nunc pro tunc. At the hearing, Woodson informed the court that she no longer wished to pursue her post-sentence motion and withdrew her allegation that she was coerced into pleading guilty. N.T. 5/11/23 at 6 (attached to Response, Doc. 38 at 81); see also Commonwealth v. Woodson, CP-46-CR-0006135-2022, Order (Mont. Cty. C.C.P. May 11, 2023) (ordering motion withdrawn) (attached to Response, Doc. 38 at 90). Wodson did not file a direct appeal.

On May 28, 2024, Woodson filed a pro se petition for relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S.A. §§ 9542-9551 ("PCRA"). Commonwealth v. Woodson, CP-46-CR-0006135-2022, Petition for Relief Pursuant to Post Conviction Relief Act (Mont. Cty. C.C.P. May 28, 2024) (attached to Response, Doc. 38 at 93). The PCRA petition broadly raised various claims including (1) deception and coercion by defense counsel, (2) deprivation of legal and constitutional rights, (3) ineffective assistance of counsel ("IAC"), (4) abandonment by counsel, (5) suppression and destruction of exculpatory evidence, (6) the accuser's credibility is questionable and

3

unreliable, and (7) her plea was involuntarily entered. Id. at 1-18. Counsel was appointed, Docket Sheet (entry dated June 6, 2024), who filed a "no merit" letter and request to withdraw pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. 1988). Commonwealth v. Woodson, CP-46-CR-0006135-2022, Letter Pursuant to Finley (Mont. Cty. C.C.P. June 24, 2024) (attached to Response, Doc. 38 at 113). The PCRA court issued a notice of intent to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 907. Id., Notice of Intent to Dismiss (Mont. Cty. C.C.P. June 26, 2024) (attached to Response, Doc. 38 at 121).[6] The court concluded that Woodson's petition was timely and construed Woodson to be raising unmeritorious claims of IAC of trial counsel for unlawfully inducing her plea and for failing to litigate certain issues. Id. at 3 (determining finality date of judgment as June 12, 2023), 4-10 (rejecting claims). On August 22, 2024, the PCRA court granted counsel's motion to withdraw and dismissed Woodson's PCRA petition. Id., Order (Mont. Cty. C.C.P. filed Aug. 22, 2024) (attached to Response, Doc. 38 at 143) (granting motion to withdraw); id., Final Order of Dismissal of PCRA Petition (Mont. Cty. C.C.P. Aug. 22, 2024) (attached to Petition, Doc. 14 at 58).[7] Woodson did not appeal.

---

[6]The court filed both a notice of intent to dismiss (Doc. 38 at 121-130) and an amended version (id. at 132-141) nearly a month later. I hereafter refer to the latter as the "Notice of Intent to Dismiss."

[7]The orders bear the handwritten date of August 20, 2024, and note that a copy was sent via certified mail to Woodson on that date; however, the clerk of court filed and entered the order on August 22, 2024. Docket Sheet (entries dated Aug. 22, 2024).

On or about September 24, 2024, Woodson mailed a pro se letter to the Court of Common Pleas, addressed to the Chief Justice of the United States, seeking an extension of time to appeal the dismissal of her PCRA petition, which the PCRA court docketed on September 27, 2024. Commonwealth v. Woodson, CP-46-CR-0006135-2022, Letter (Mont. Cty. C.C.P. Sept. 27, 2024) (attached to Response, Doc. 38 at 146).[8] The PCRA court construed the motion as a request to file a nunc pro tunc appeal of the denial of PCRA relief, and denied the motion. Id., Order (Mont. Cty. C.C.P. Oct. 9, 2024) (attached to Petition, Doc. 14 at 60). Woodson did not appeal that denial to the Superior Court.

Woodson mailed the identical letter, postmarked September 23, 2024, to this Court, which docketed it on September 25, 2024, as a habeas petition. See Doc. 1 at 1, 2. The Court furnished Woodson with the Court's standard habeas form with instructions that she complete the form if she wanted to pursue habeas relief. Docs. 3 & 8. On February 13, 2025, Woodson filed the present habeas petition using the Court's form, which this court docketed and which I refer to here as her habeas petition. Doc. 14.[9] The

---

[8] In the letter, Woodson stated that she was making her request on September 16, 2024, but the postmark on the envelope to the Court of Common Pleas is September 24, 2024.

[9] The federal court employs the "mailbox rule," deeming a pro se habeas petition filed when given to prison authorities for mailing. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)). Here, while Woodson's original filing in this Court was docketed on September 25, 2024, she dated the letter September 16, and it is postmarked September 23. Doc. 1 at 2. Similarly, she states that she put the form petition into prison mail on February 4, 2025, although it is postmarked February 13 and was filed on February 24. Doc. 14 at 30, 66. I conclude that the postmark dates are the most accurate mailing dates for purposes of the mailbox rule and

5

petition raises claims of (1) police misconduct, (2) sufficiency of evidence, (3) various allegations of IAC of trial counsel, including failures in pretrial investigation and preparation, trial strategy, access to exculpatory evidence, and recovery of illegally seized personal property, and (4) prosecutorial misconduct. Doc. 14 ¶ 11 (GROUNDS ONE-FOUR). The District Attorney filed a response to Woodson's habeas petition arguing that it should be dismissed as untimely, Doc. 38, and Woodson filed a reply. Doc. 40. The Honorable Kai N. Scott referred this matter to me to prepare a Report and Recommendation ("R&R"). Doc. 17.

## II.   STATUTE OF LIMITATIONS

### A.   Start Date

#### 1.   Finality date

Federal habeas corpus petitions are subject to a one-year limitations period. 28 U.S.C. § 2244(d). Ordinarily, the one-year period begins to run on the date the judgment became final in state court. Id. § 2244(d)(1)(A). Here, Woodson's sentence was imposed on April 17, 2023, and because she did not appeal her conviction, the judgment became final on May 17, 2023, when the thirty-day period in which to file an appeal in the Pennsylvania Superior Court expired. See Pa. R.A.P. 903(a) (providing thirty days to appeal).

However, the question arises whether Woodson's nunc pro tunc post-sentence motion extended the finality date of her conviction. Under Pennsylvania law, when a

---

will use those dates in my analysis. Even if I gave her the benefit of the earlier dates she identifies, it would not render her petition timely.

defendant files a timely post-sentence motion and withdraws the motion, the notice of appeal is due within 30 days of the order memorializing the withdrawal.  Pa. R. Crim. P. 720(A)(2)(c).  Here, because the trial court entered the withdrawal order on May 11, 2023, Woodson might argue that her notice of appeal deadline, and therefore her finality date, was June 12, 2023.[10]  However, the District Attorney argues that absent an express order from the trial court granting Woodson leave to file her motion nunc pro tunc, the untimely post-sentence motion did not toll the appeal period.  Doc. 38 at 5-6.

As noted, post-sentence motions are due within 10 days after the imposition of sentence.  Pa. R. Crim. P. 720(A)(1).  The decision to allow the filing of a post-trial motion nunc pro tunc is vested in the discretion of the trial court.  Commonwealth v. Dreves, 839 A.2d 1122, 1128 (Pa. Super. 2003) (en banc).  A defendant must demonstrate sufficient cause for nunc pro tunc relief.  Id. (explaining that sufficient cause requires a petitioner to demonstrate an extraordinary circumstance which excuses the tardiness).  Merely designating a motion as a post-sentence motion nunc pro tunc is not enough, rather "[i]f the trial court chooses to permit a defendant to file a post-sentence motion nunc pro tunc, the court must do so expressly."  Id.  The Superior Court has interpreted "expressly" to require an order granting the right to file a post-sentence motion nunc pro tunc within 30 days of imposition of sentence.  See Commonwealth v. Capaldi, 112 A.3d 1242, 1244-45 (Pa. Super. 2015) (citing Witherspoon v. Wal-Mart Stores, Inc., 814 A.2d 1222, 1225 (Pa. Super. 2002); Commonwealth v. Wright, 846 A.2d

---

[10] June 10, 2023, was a Saturday.

730, 734 (Pa. Super. 2004); Dreves, 839 A.2d at 1128 & n.6)). The request for leave to file nunc pro tunc is different from the merits of the post-sentence motion; hence, the trial court's resolution of the late post-sentence motion is not a substitute for an order expressly granting nunc pro tunc relief. Dreves, 839 A.2d at 1129 (court's consideration and denial of post-sentence motion did not render the motion timely); see also Capaldi, 112 A.3d at 1245 (post-sentence motion did not toll appeal where trial court impliedly granted nunc pro tunc relief by holding a hearing, denying the motion, and later explaining in its Rule 1925(a) opinion why it addressed the merits). Thus, if the court does not expressly grant leave to file the motion nunc pro tunc, the time for filing an appeal is neither tolled nor extended. Id.

 The record in Woodson's case contains no such express order granting her leave to file the post sentence motion nunc pro tunc. Although Judge DelRicci directed briefing and held a hearing on Woodson's post-sentence motion, neither the order scheduling briefing and a hearing, nor the order memorializing the motion's withdrawal expressly granted nunc pro tunc relief. Nor did Judge DelRicci grant it orally at the hearing on the motion. N.T. 5/11/23. The judge implied in his notice of intent to dismiss, issued more than a year later, that he granted nunc pro tunc relief, because he considered the finality date to be June 12, 2023. Notice of Intent to Dismiss, at 3. Nevertheless, as the cases discussed illustrate, an express contemporaneous ruling is required. See Capaldi, 112 A.3d at 1245. Accordingly, the District Attorney is correct that the post-sentence motion

did not toll the appeal period, and Woodson's judgment of sentence became final on May 17, 2023.[11]

2. Alternate start dates

The habeas statute provides for alternative start dates, specifically the date when a state-created impediment to filing is lifted, a new constitutional right is recognized, or the factual predicate of a claim could be discovered through the exercise of diligence. 28 U.S.C. § 2244(d)(1)(B)-(D). Woodson appears to claim entitlement to the alternative start dates in subsections B and D, arguing that she was hindered from obtaining transcripts and case records which prevented her from filing her habeas petition earlier. Doc. 14 at 28; Doc. 40 at 3. I am not persuaded that Woodson has established entitlement to either alternative start date.

The Third Circuit has not addressed the meaning of the phrase "impediment to filing" under section 2244(d)(1)(B), however courts in this district have interpreted it to require "state action that both violated the Constitution or laws of the United States and prevented the prisoner from filing his federal petition." See Tyler v. Houser, Civ. No. 24-1096, 2025 WL 1942997, at *2 & n.3 (E.D. Pa. Mar. 27, 2025) (quoting Bandy v. Wenerowics, Civ. No. 13-673, 2013 WL 6231312, at *5 (E.D. Pa. Dec. 2, 2013)). Courts

---

[11]Unlike the defendant in Capaldi, whose nunc pro tunc motion provided no excuse for the late filing, 1121 A.3d at 1244, Woodson's nunc pro tunc motion did allege nunc pro tunc grounds, namely that counsel learned from Woodson on the day of the filing that she believed her plea was coerced, albeit stating that counsel received notice of that information three days prior. Supra at 3. Nevertheless, the caselaw is clear that nunc pro tunc leave must be express. And despite impliedly granting relief, Judge DelRicci never stated whether he considered the grounds sufficient under the Dreves standard requiring an extraordinary circumstance excusing the late request. 839 A.2d at 1128.

have also held that lack of access to trial transcripts does not constitute an "impediment" within the meaning subsection (d)(1)(B). See, e.g., Tisdell v. Bickel, Civ. No. 14-1834, 2015 WL 4977184, at *3 (E.D. Pa. Aug. 20, 2015) (collecting cases and noting that defendant does not need transcripts and other court documents to file post-conviction petition).

In assessing whether the later start date under section 2244(d)(1)(D) applies, courts ask "when, in the particular circumstances at issue here, we should expect a reasonable petitioner to discover the facts giving rise to a habeas claim." Bracey v. Sup't Rockview SCI, 986 F.3d 274, 286 (3d Cir. 2021) (cleaned up) (citation omitted); see also Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances.") (citation omitted).

Here, Woodson has not alleged specific facts showing that lack of access to transcripts or police paperwork prevented earlier filing or constituted a qualifying state-created impediment under subsections 2244(d)(1)(B) or (D). It is also unclear when and what paperwork Woodson received, from whom she requested it, or how those materials relate to her claims. She also does not identify when any impediment was removed for purposes of an alternative start date, or when the facts pertaining to her claim became discoverable, making any alternative start date entirely speculative. Cf. Wilson v. Beard, 426 F.3d 653, 660-61 (3d Cir. 2005) (petitioner offered sufficient proof that he discovered the existence of tapes to support his Batson claims on a specific date, triggering section 2244(d)(1)(D)'s alternative start date); Critchley v. Thaler, 586 F.3d

318, 320-21 (5th Cir. 2009) (state court clerk's office's apparent practice of mishandling prisoner filings constituted state-created impediment under section 2244(d)(1)(B) which tolled the limitations period applicable to petitioner until the date the state court actually filed his petition for collateral relief).

Accordingly, the limitations start date remains the finality date of May 17, 2023, and Woodson had until May 17, 2024, to file a timely habeas petition, absent tolling or a showing of actual innocence.

### B. Statutory Tolling

The habeas limitations period is subject to statutory tolling during the time a properly filed state post-conviction petition is pending. 28 U.S.C. § 2244(d)(2). A petition is considered "properly filed" if it is "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998); see also Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (time limits on post-conviction petitions are conditions to proper filing). When applying the habeas statute, federal courts look to state law governing when a petition for collateral relief is "properly filed" and "defer to a state's highest court when it rules on an issue." Merritt v. Blaine, 326 F.3d 157, 165 (3d Cir. 2003) (quoting Fahy v. Horn, 240 F.3d 239, 243-44 (3d Cir. 2001)). In Merritt, the Third Circuit extended such deference to a PCRA timeliness determination made by the Pennsylvania Superior Court where that court was the highest court to decide the issue. Id. at 167-68; see also Lee v. Oberlander, Civ. No. 21-665, 2024 WL 327232, at *5 & n.14 (M.D. Pa. Jan. 29, 2024) (deferring to PCRA court's determination on timeliness where that court

was highest court to decide issue). PCRA petitions are generally due within one year of the date the petitioner's judgment of sentence became final. 42 Pa. C.S.A. § 9545(b)(1).

Here, Woodson filed her PCRA petition on May 28, 2024.[12] As noted, Judge DelRicci found the petition to be timely because he found a finality date of June 12, 2023, having (impliedly) accepted Woodson's nunc pro tunc post sentence motion as timely. However, because I have determined that Woodson's federal statute of limitations begin running on May 17, 2023, her time to file in this court expired on May 17, 2024, eleven days before she filed her PCRA petition. A PCRA petition that is filed outside the federal limitations period, even if considered timely by the state court, cannot render the federal petition timely. See Cordle v. Guarino, 428 F.3d 46, 48 n.4 (1st Cir. 2005) ("Section 2244(d)(2) only stops, but does not reset, the [habeas] clock from ticking and cannot revive a time period that has already expired.") (internal quotation marks and citation omitted); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state

---

[12] The PCRA petition was filed on May 28, 2024, but Woodson dated it May 3, 2024. PCRA Pet. at 1. Although a copy of a mailing envelope is attached, no date is visible on the postmark. Id. at 19. There is no other indication of when Woodson deposited the filing with prison authorities. Like the federal courts, Pennsylvania courts employ the mailbox rule. See Commonwealth v. Little, 716 A.2d 1287, 1289 (Pa. Super. 1998) (applying mailbox rule to PCRA filings). To invoke the rule, however, a petitioner must provide "reasonably verifiable evidence of the date that the prisoner deposits the [filing] with the prison authorities." Commonwealth v. Perez, 799 A.2d 848, 851 (Pa. Super. 2002) (quoting Commonwealth v. Jones, 700 A.2d 423, 426 (Pa. 1997)). The date a petitioner places on the filing absent more evidence is insufficient. See Yerger v. Walker, Civ. No. 21-1812, 2024 WL 5410401, at *6 (E.D. Pa. Aug. 21, 2024) ("While a petitioner's dated signature is generally acceptable proof of when a petitioner presented a habeas petition to prison authorities for purposes of the federal mailbox rule . . . it is insufficient for purposes of Pennsylvania's mailbox rule."). Therefore, May 28, 2024 is the effective date for calculating the filing date of Woodson's PCRA petition.

court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Thus, because Woodson's PCRA petition did not operate to toll the running of her federal limitations period, that period ended on May 17, 2024, several months before Woodson filed anything in this court.

Nevertheless, I will assume in Woodson's favor that her conviction was not final until June 12, 2023. In that case, her federal limitations period ran from that date for 351 days until it began to toll on May 28, 2024, and started to run again on September 23, 2024, when the time to seek Superior Court review of the dismissal of her PCRA petition expired,[13] leaving her fourteen days, or until October 7, 2024, to file. Because her first federal filing date was September 23, 2024, this assumption would render that filing date timely. However, her substantive petition (Doc. 14) was not filed in this court until February 13, 2025, several months after the limitations period expired, thus raising the question of which filing controls for purposes of the limitations analysis.

The District Attorney argues that I should not treat Woodson's first filing as a habeas petition for purposes of the limitations period because Woodson did not request habeas relief but rather requested additional time to appeal the denial of her PCRA petition. Doc. 38 at 7 & n.3. Woodson responds that she expressed her intent to file a habeas petition months before she filed her PCRA petition, and as supporting evidence claims to have requested habeas forms prior to her first filing. Doc. 40 at 4. She also

---

[13]The PCRA court's order dismissing the PCRA petition was entered on August 22, 2024, and thirty days after that date fell on Saturday, September 21, 2024.

states that she sent a copy of her nunc pro tunc PCRA motion to this Court to "provide documentation of the lower court's agenda of partiality." Id.  I agree with the District Attorney that Woodson's first filing was not a timely habeas petition.

The one-year limitations period set forth in section 2244(d)(1) must be applied on a claim-by-claim basis.  Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004).  A petitioner invoking section 2244(d)(1)(A) must present her claims within one-year from the date on which the judgment became final.  When a petitioner files an amended petition after that period has expired, courts assess the timeliness of any new claims by asking whether they "relate back" to the claims raised in the original petition.  Wilkerson v. Sup't Fayette SCI, 871 F.3d 221, 236-37 (3d Cir. 2017) (citing Mayle v. Felix, 545 U.S. 644 (2005)).  Just as a petitioner may not rely on a timely filed petition under section 2244(d)(1)(A) to bootstrap later-filed untimely claims, Fielder, 379 F.3d at 120, a petitioner may not obtain the benefit of an earlier filing date by submitting an initial motion that asserts no habeas claims and later filing a petition that raises them.  See, e,g., Jordan v. Rivello, Civ. No. 22-4865, 2024 WL 2972304, at *1, 6 (E.D. Pa. Feb. 9, 2024) (petitioner's federal motion for extension of time to file PCRA petition, docketed as a habeas petition but which did not include any claims, did not toll the limitations period for his later-filed untimely claims), R&R adopted, 2024 WL 2959296 (E.D. Pa. June 12, 2023); United States v. Khan, No. 16-CR-201-2, 2020 U.S. Dist. LEXIS 174232 (E.D. Pa. Sept. 18, 2020) (denying request for extension of time to file habeas petition where motion did not provide "sufficient information . . . to rule on whether the claims in his proposed subsequent petition will relate back to any argument included in the present motion").

14

Here, Woodson's first filing did not raise any claims, but merely requested an extension of time to appeal the denial of PCRA relief. Nor did it attach any document previewing the claims. Also, because the first filing did not refer to any facts or legal arguments, it cannot be said that the claims later articulated in her petition related back to the earlier filing. Therefore, Woodson's claims were raised after the expiration of the limitations period, and unless she can benefit from equitable tolling or the actual innocence exception, this court cannot address her claims.

### C. Equitable Tolling

The United States Supreme Court has held that the habeas time bar is not jurisdictional, but is subject to tolling on equitable grounds. Holland v. Florida, 560 U.S. 631, 645-46 (2010). In Holland, the Supreme Court held that equitable tolling is proper only where the petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The diligence required for equitable tolling purposes is 'reasonable diligence.'" Id. at 653 (citing Lonchar v. Thomas, 517 U.S. 314, 326 (1996)). Additionally, the Court has held that to qualify for equitable tolling, the petitioner must exercise reasonable diligence throughout the period she seeks to toll. See Pace, 544 U.S. at 418 (petitioner must also establish diligence); LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005) (petitioner must exercise diligence in exhausting state remedies and bringing federal habeas petition).

The Third Circuit has held that equitable tolling is justified when (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been

15

prevented from asserting his rights, (3) the plaintiff has timely asserted his rights but has mistakenly done so in the wrong forum, or (4) the plaintiff received inadequate notice of the right to file suit, a motion for appointment of counsel is pending, or the court has misled the plaintiff into believing that they have done everything required. See Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).

Woodson attributes her delay in filing to mental and physical health issues (and bad medical care), a lack of access to case records, such as "valid" search and arrest warrants, and that she has been pursuing house arrest and other relief pending appeal during this time. Doc. 14 at 25-26, 29. She also claims that she has no control over if/when her mail goes out, if/when her mail is received, or if/when she has access to legal materials. Doc. 40 at 3.

The Third Circuit has recognized that while "mental incompetence is not a per se reason toll a statute of limitations," it may constitute an extraordinary circumstance warranting equitable tolling where "the alleged mental incompetence [has] somehow . . . affected the petitioner's ability to file a timely habeas petition." Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001). Similarly, physical health problems may constitute extraordinary circumstances if they prevented a petitioner's timely filing. See Rodriguez v. Soloman, Civ. No. 22-2647, 2023 WL 11891685, at *4 (E.D. Pa. Oct. 3, 2023). The Third Circuit considers a non-exhaustive list of factors in determining whether an impairment prevented a petitioner from pursuing a habeas petition, including whether (1) the petitioner handled or assisted in other legal matters which required action during the federal limitations period, (2) the petitioner supported her allegations of impairment

16

with extrinsic evidence such as evaluations and or medications, and (3) the petitioner exhibited periods of relative stability and good mental health when she could have pursued a petition.  Id. at *5 (citing Champney v. Sec'y Pa. Dep't of Corr., 469 F. App'x 113, 118 (3d Cir. 2012); Wallace v Sup't Mahanoy SCI, 2 F.4th 133, 145 (3d Cir. 2021)).

      Here, Woodson has not met her burden of establishing that mental or physical infirmities prevented her from timely filing her habeas petition.  She has not supported her allegations of impairment with extrinsic evidence or explained how during the entire one-year period in which she could have filed a PCRA petition or a habeas petition, she was unable to do so.  Cf. Rodriguez, 2023 WL 11891685, at *5 (rejecting equitable tolling in part because stints in infirmary were brief, and there were periods of relative stability during the limitations period).  The only specific injury Woodson mentions is that she was in a bus accident, but she does not describe the time or nature of any resulting limitation.  Doc. 14 at 29.

      As to her remaining equitable tolling arguments -- limited access to case records and legal materials, that she was preoccupied by efforts to obtain house arrest and pursue a PCRA appeal, and problems with the prison mail system -- none justifies tolling.  First, just as I described above with respect to when she reasonably should have discovered the basis for her claims, it is unclear when Woodson requested and received the warrants, or for that matter why "unsigned" warrants would frustrate her ability to bring claims related to the information contained in them.  Moreover, the fact that Woodson was pursuing release on house arrest actually undermines her assertion that she was unable to file a habeas petition and demonstrates a lack of diligence.  In any event, Woodson could

17

have also filed a protective habeas petition during that period and sought a stay while she exhausted her claims in state court. Finally, Woodson cannot claim deficiencies in the prison mail system as an extraordinary circumstance. The court has already applied the mailbox rule to all relevant dates ascertainable from the record, and courts have held that prison mail delays do not warrant equitable tolling. See, e.g., Traub v. Folio, Civ. No. 04-386, 2004 WL 2252115, at *2 (E.D. Pa. Oct. 5, 2004) (60-day prison mail delay not an extraordinary circumstance where petitioner let long period elapse before filing); Sandvik v. United States, 177 F.3d 1269, 1272 (11th Cir. 1999) (mailing delay not grounds for equitable tolling where petitioner could have mailed petition earlier). Woodson's vague assertion of limited access to legal materials likewise falls short of demonstrating that any such restrictions actually prevented her from timely filing. See Camps v. Terra, Civ. No. 23-2046, 2023 WL 8880128, at *3-4 (E.D. Pa. Dec. 22, 2023) (petitioner did not show how lack of access to legal materials actually prevented her from filing habeas petition).

### D. Actual Innocence

The Supreme Court has held that a convincing claim of actual innocence will overcome the habeas limitations period. McQuiggin v. Perkins, 569 U.S. 383 (2013). Innocence in this context "means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). This requires the petitioner to supplement his claim with new reliable evidence of factual innocence. Schlup v. Delo, 513 U.S. 298, 324 (1995). The Supreme Court has explained that this is an exacting standard. "The miscarriage of justice

exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 569 U.S. at 394-95 (quoting Schlup, 513 U.S. at 329). While a petitioner alleging actual innocence need not prove diligence to assert such claim, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." Id. at 399; see also Schlup, 513 U.S. at 332 ("the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of…evidence [of actual innocence].").

Although Woodson's petition devotes several pages to challenging the legal sufficiency of her conviction, she does not allege or offer new evidence of her actual innocence. See, e.g., Doc. 14 at 10 ("[T]he evidence was insufficient to support a conviction."); id. at 11 ("There was insufficient nexus between the seizure of goods and the crimes alleged"; "The facts do not establish the validity of evidence, a motive, or that there had been a crime committed"; "The accuser's medical records indicate several scenarios as to how the accuser could have become unresponsive beyond Woodson's fault and liability"); id. at 12 ("[T]he conviction . . .was based on constructive hearsay"). Therefore, the actual innocence exception does not apply to Woodson. Bousley, 523 U.S. at 623.

## IV. CONCLUSION

Because Woodson's conviction became final on May 17, 2023, but she did not file her PCRA petition until after May 17, 2024, her federal statute of limitations expired on that date, and her present petition is untimely. Even if this court were to give her the benefit of the finality date adopted by the PCRA court, her petition is still untimely, because she did not file her claims until February 2025, several months after her time to appeal the denial of PCRA relief expired. Woodson is unable to take advantage of other avenues to render her claims timely, and her petition should thereby be dismissed.

Therefore, I make the following:

### RECOMMENDATION

AND NOW, this 23rd day of December 2025, IT IS RESPECTIVELY RECOMMENDED that the petition for writ of habeas corpus be DISMISSED as untimely filed. There has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability. Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/ Elizabeth T. Hey
_____
ELIZABETH T. HEY, U.S.M.J